Wilton Bentley v. Commissioner.
Bentley v. Commissioner
Docket No. 32170.
United States Tax Court
1952 Tax Ct. Memo LEXIS 14; 11 T.C.M. (CCH) 1196; T.C.M. (RIA) 52350; December 11, 1952
*14 In 1934, petitioner entered into a joint venture with one Cardoza, for the patenting, development, and sale of Cardoza's invention. The patent was issued in 1937, and petitioner received a one-half interest in it. During the years 1934 through 1945, petitioner made payments for expenses incident to the obtaining of the patent, payments for models and supplies, and payments to Cardoza in the amount of $12,961.65. Held, under all the facts, petitioner has failed to prove that he abandoned his interest in the patent in 1946 and that the patent was in fact worthless in 1946. Herrick K. Lidstone, Esq., and Eugene H. Lattin, Esq., for the petitioner. Robert R. Blasi, Esq., for the respondent. *15 RICE
Memorandum Findings of Fact and Opinion The respondent determined a deficiency in income tax for the calendar year 1946 in the amount of $3,712.65. In his petition, the petitioner claims an overpayment in income tax for 1946. The issues to be decided are (1) whether petitioner is entitled to a deduction during 1946 for a loss from the abandonment of his 50 per cent interest in a patent; (2) if petitioner is entitled to such deduction, what amounts expended in the promotion and sale of said patent should have been capitalized; and (3) if any portion of the amounts expended during 1944 were not capital expenditures the effect of section 3801 of the Internal Revenue Code. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein. Petitioner is an individual, residing at Hastings-on-Hudson, New York. His income tax return for 1946 was filed with the collector of internal revenue for the fourteenth district of New York. Petitioner graduated from Cornell University in 1898 as a mechanical engineer. He is executive vice-president of the K. W. Battery Company, a corporation engaged *16 in the manufacture of storage batteries for industrial purposes, and in direct charge of the office and factory in New York and of sales in the New York area. He has been with the company since 1920. Petitioner became acquainted with John B. N. Cardoza (hereinafter referred to as Cardoza) shortly after coming to New York in 1920. Cardoza was a salesman for the largest manufacturer of electric battery-driven trucks. Cardoza's hobby was photography and he had various inventions and processes, most of which centered around photography. He discussed them with petitioner at various times. In the latter part of the 1920's, Cardoza organized a company to sell electric trucks, which company went out of business in the depression of 1929. Cardoza apparently lost all of his savings and obtained a job as a clerk. Cardoza felt certain that the processes and inventions which he had worked on as a hobby had a commercial value and that he would like to do something with them. One of these was a stereoscopic device through which color images could be produced with ordinary black and white pictures. The color image was obtained by use of varying light sources introduced through color filters. The *17 particular improvement which Cardoza had worked out was a varying source of light through which images were projected in better colors than any other process that was known at the time. Cardoza offered petitioner a 50 per cent interest in the patent if petitioner would help him get the patent and develop it. Petitioner had always been interested in new manufacturing processes and in patents, and, after discussing this particular device with Cardoza, thought that there would be a possibility of commercial profit if a patent could be obtained. On June 6, 1934, petitioner and Cardoza executed a memorandum, signed by Cardoza, from which a formal agreement was to be drawn. In this memorandum, petitioner agreed to pay for the cost of the patent, take Cardoza's stereoscopic camera out of loan, supply cash to produce a negative and positive film for use in a viewing box, and to pay Cardoza $150. In return Cardoza agreed to assign petitioner a 50 per cent interest in the process and to supply all technical work needed. On June 25, 1934, Cardoza filed an application for a patent in connection with the stereoscopic process and, on July 9, 1934, assigned a one-half interest in the said patent *18 application to the petitioner. Such assignment was recorded in the United States Patent Office on July 10, 1934. On June 8, 1937, a patent was issued to Cardoza and petitioner, their heirs or assigns. Petitioner paid an attorney $240.50 for legal expenses incident to obtaining a patent. Both Cardoza and petitioner intended that the patent would either be sold outright or disposed of under a royalty agreement. They did not intend to manufacture the stereoscopic devices on a commercial basis. Sometime after the patent application was filed, Cardoza gave up his job as clerk and started to spend all of his time on the development and promotion of the process. During the years 1934 through 1945, petitioner made additional payments for expenses incident to the obtaining of the patent, payments for models and supplies, and payments to Cardoza in the amount of $12,721.15. A summary of such payments is as follows: Payments to Cardoza per agreement
for 50% interest
$ 274.50
Payments to Cardoza, miscellaneous
expenses 1935-44
223.85
Payments to suppliers
216.63
Payments to Cardoza, miscellaneous
subsistence 1936-37
335.00
Payments for the account of Cardoza's
rent to 1945
3,202.50
Payments to Consolidated Edison Co.
for the account of Cardoza
607.42
Payments to Cardoza 1938-45
7,861.25
Total
$12,721.15
*19 Such payments were made to or for the account of Cardoza, because petitioner felt that the sale or licensing would be better accomplished if Cardoza were able to devote his full time and efforts to the development, promotion, and sale of the patent. In May 1938, an agreement was drawn up between petitioner and Cardoza, as parties of the first part, and one Arthur W. Ramsdell, party of the second part, whereby the latter was to obtain an exclusive license to manufacture and sell devices or articles under the patent. Petitioner and Cardoza, under the terms of the agreement, were to receive $25,000 in cash plus a royalty arrangement over the life of the patent. Such agreement was never executed. During 1943-1944, petitioner began to lose faith in the stereoscopic process. Considerable improvements were being made in color photography, and the competitive position of the patent was becoming less favorable. In the latter part of 1944, Cardoza wanted him to interest some of his friends in the purchase of the patent, but petitioner refused. He had always left all matters connected with the development and sale of the patent up to Cardoza. In the latter part of 1944 or beginning of 1945, *20 he notified Cardoza that he no longer had any faith in the patent and would advance no further funds for the promotion of the patent. Cardoza was "very much disgruntled" and "almost irrational" when petitioner informed him that he would give him no more financial aid. Petitioner made no further efforts to sell his interest in the patent, but in October 1945, petitioner was approached by Charles Tressler Lark, an attorney, and asked whether he would sell his interest in the patent to an undisclosed party for $1,000. Petitioner said that he would. On October 9, 1945, petitioner sent Lark a letter, stating in part as follows: "Confirming our conversation of yesterday, I am willing to accept $1000.00 in cash for my half of U.S. patent #2083313, issued jointly to J. Byrd Cardoza and myself. The Patent is dated June 7, 1937." "The offer which I make is subject to prompt acceptance." On October 19, 1945, Lark wrote petitioner a letter in which the following appeared: "* * * There was one item which you forgot to insert and that was, as I understood the matter, the tentative agreement was that for your surrendering one-half of your patent you were to receive $1,000. on or before *21 the first of the year, as I think you will recall that was my suggestion and I understood it was agreeable to you." Petitioner replied on October 22, 1945, as follows: "In reply to your letter of October 19th. "I do not remember that anything was said at our meeting with reference to the definite time before which your client would complete the proposed sale. However, I am willing to hold the matter open until the first of the year. "With kindest personal regards." Petitioner did not hear from Lark again and, on June 18, 1946, he wrote to him inquiring whether his client had any further interest in purchasing petitioner's one-half interest in the patent, requesting a definite answer. Petitioner received no reply to such letter. From that time to the time of the hearing, petitioner made no further efforts to develop the patent or to sell his interest in the patent. He advanced no money in connection with the patent in 1946 or thereafter, testifying that he "forgot" about it. In 1944, petitioner claimed a deduction in the amount of $1,968.36 representing expenditures during 1944 connected with the patent. In the revenue agent's report, dated May 29, 1946, this deduction was *22 disallowed on the ground that the disbursements were in the nature of a capital outlay and that the patent had value as of December 31, 1944. Petitioner paid the deficiency in income tax for 1944 arising from such disallowances. Cardoza died in December 1948. In his income tax return for 1946, petitioner deducted $12,121.10 as a loss due to abandonment of a worthless patent. Such deduction was disallowed by respondent. Petitioner has failed to sustain his burden of proof that he abandoned his interest in the patent during 1946, and that the patent in fact became worthless in that year. Opinion RICE, Judge: The first question to be decided is whether petitioner suffered a loss through abandonment of his one-half interest in the patent in 1946. Respondent contends that petitioner has failed to establish either any identifiable act of abandonment of the patent, or that the patent was actually worhless in 1946, and that petitioner's alleged abandonment consisted of nothing more than a mental attitude. To be entitled to a loss deduction under section 23 (e) (2) of the Internal Revenue Code, it is necessary for petitioner to show that the patent was in fact *23 worthless in 1946 and that he had abandoned it in that year. Abandonment is a question of intent, and a mere mental attitude is insufficient to prove such intent. An identifiable act indicative of such intent is required. See Shoolman v. Commissioner, 108 Fed. (2d) 987 (C.A. 1, 1940), cert. den. 310 U.S. 637 (1940); Commissioner v. McCarthy, 129 Fed. (2d) 84 (C.A. 7, 1942). In this case, petitioner "lost faith" in the patent in 1944 or 1945, and at that time notified Cardoza that he would put no more money into the invention. Such a decision in and of itself is not indicative of an intent to abandon property. In October 1945, he received an inquiry as to whether he would sell his interest in the patent for $1,000, and he agreed to keep negotiations open until the beginning of 1946. When, in June of 1946, he received no answer to his inquiry regarding the sale of his interest in the patent, petitioner testified that he "forgot" about it. Such testimony is insufficient to sustain the burden of proof that there actually was an abandonment of the patent. Where the facts establish that property has no potential value, a loss deduction is allowed *24 in the year the property becomes worthless even though there has been no identifiable act of abandonment. The burden of proving the lack of such potential value is on the petitioner. Cf. Sterling Morton, 38 B.T.A. 1270 (1938), affd. 112 Fed. (2d) 320 (C.A. 7, 1940). The record in this case does not establish that the patent had no potential value in 1946. Petitioner's testimony was to the effect that the development of color photography had decreased the potential value of Cardoza's invention. Petitioner admittedly was not an expert in this field so that his testimony, in itself, is insufficient to establish that the potential value was zero in 1946. Under such circumstances, petitioner has failed to prove that he is entitled to a deductible loss during 1946 under section 23 (e) (2) of the Internal Revenue Code. Since we have held that petitioner has failed to prove he is entitled to a loss deduction during the taxable year in question, it is unnecessary for us to determine the other issues raised by the pleadings. Decision will be entered for the respondent.